UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                 :

UNITED STATES OF AMERICA

                                 :      15 Cr. 377 (AJN)

       - v. -

                                 :

STEVEN RAWLINS,

                                 :

           Defendant.

                                 :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S MOTIONS IN LIMINE AND
## NOTICE OF OTHER CHARGED AND UNCHARGED
## CRIMES, WRONGS, OR ACTS

PREET BHARARA
United States Attorney for the Southern
District of New York
One St. Andrew's Plaza
New York, New York 10007

Andrew Bauer
Andrew DeFilippis
Assistant United States Attorneys
     -Of Counsel-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                   :

UNITED STATES OF AMERICA              15 Cr. 377 (AJN)
                   :

       - v. -
                   :

STEVEN RAWLINS,
                   :

       Defendant.
                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S MOTIONS IN LIMINE AND
## NOTICE OF OTHER CHARGED AND UNCHARGED
## <u>CRIMES, WRONGS, OR ACTS</u>

The Government hereby moves *in limine* for the following orders with respect to the trial

of defendant Steven Rawlins, which is scheduled to begin on November 2, 2015:

    1.   An order to preclude the defendant from eliciting testimony or evidence
          relating to the defendant's civil lawsuit against one of the victim companies
          referenced in the Information;

    2.

 and

    3.   An order allowing the Government to introduce recorded telephone calls made
          by the CEO of Company-1 to Rawlins' co-conspirator, Franklin Palm.

In addition, in Section IV, the Government provides notice of a number of acts by the

defendant that are inextricably intertwined with the charged fraud on the victim companies

referenced in the Information ("Company-1" and "Company-2").  As such, the Government

intends to present evidence of each of these fraudulent acts—even those directed at victims

unaffiliated with Company-1 and Company-2—as direct evidence of the crime charged in the

Information.  Furthermore, for the similar reason that it bears directly on the charged crime, the Government intends to offer proof at trial of the bankruptcy of one of the defendant's companies. In the alternative, the Government herein provides notice that it may also seek to introduce these acts as evidence of other charged and uncharged crimes, wrongs, or acts committed by the defendant pursuant to Federal Rule of Criminal Procedure 404(b).

**I.**      **The Court Should Preclude the Defendant from Eliciting Testimony or Evidence Relating to the Defendant's Civil Lawsuit Against Company-1**

On or about March 25, 2015—approximately one month after the defendant's arrest in this case—one of the companies controlled by the defendant (the "Plaintiff Company") filed a civil Complaint in the Second Circuit for David County, Tennessee alleging, among other things, that Company-1 breached its contract with the Plaintiff Company by failing to pay management fees, and by failing to reimburse the Plaintiff Company for expenses incurred in carrying out its management responsibilities. Civil Complaint ¶¶ 1-11.  *See*  Case No.15c-1149.  The allegations arise from the same consultant-client relationship that is at issue in this case, and that is alleged to have been the vehicle for the defendant's fraud.

While the Government does not oppose the admission of testimony or evidence concerning the purported facts underlying the Plaintiff Company's allegations, the Government respectfully requests that the Court preclude the admission of evidence specifically referring to the lawsuit pending against Company-1.  The Government expects that the defense may seek to invoke the pending lawsuit in order to assert or suggest that the defendant, not Company-1, was in some way wronged and/or financially harmed in connection with the aforementioned business relationship between the Plaintiff Company and Company-1.  While the defendant is entitled to raise such a factual defense, any references to specific pleadings or allegations in a separate civil

lawsuit are inadmissible hearsay.  Fed. R. Evid.  801 and 802.  <u>See Richmond v. General</u>

<u>Nutrition Centers, Inc., et al,</u> No. 08 Civ. 3577, 2012 WL 762307, *9  (S.D.N.Y. March 9, 2012)

(excluding specific allegations of discrimination contained in legal complaints and other

documents, while permitting testimony concerning purported facts relating to such allegations).

Moreover, the mere existence of a pending lawsuit has no probative value here, particularly

because the lawsuit has not yet been resolved and was filed *after* the defendant was charged with

the instant offense.  Indeed, presentation of such evidence to the jury would be unnecessarily

prejudicial and confusing, as it might cause jurors to infer, based on the existence of a pending

civil lawsuit alone, that there is merit to the defendant's assertions.  <u>See</u> <u>United States v.</u>

<u>Biesiadecki,</u> 1989 WL 158011, *2 (N.D. Ill. Dec. 1, 1989) (holding that testimony concerning

"whether a customer believed she had been defrauded and what [legal] action she took based on

that belief, is irrelevant" and would likely "confuse and distract the jury.")  Accordingly,

references to the pending lawsuit should be precluded at trial.

**II.**





**III.**   **The Court Should Issue An Order Allowing the Government to Introduce Recorded Telephone Calls Between the CEO and <u>Rawlins's co-conspirator, Franklin Palm</u>**

**A.  Background**

The Government expects that the CEO will testify at trial that, during the course of the Government's investigation of the defendant's fraud, the CEO agreed to make a series of consensually-monitored telephone conversations with an individual named Franklin Palm (the "Palm Recordings").[1]  The evidence at trial will show that Franklin Palm ("Palm") engaged in fraudulent business activities along with the defendant, and that Palm worked as an employee of at least one of the companies controlled by the defendant.  Indeed, Palm himself stated to the FBI that he was Managing Partner and Chief Operations Officer for one of the defendant's companies.  The evidence will show that in 2013, another individual from that same company who worked with Palm used the CEO's credit card without authorization during a personal trip to New York with his girlfriend.  Further, the evidence will show, separately, that the defendant told the CEO that Palm worked with the defendant and was involved in efforts to obtain "financing" for Company-1 and Company-2.  Indeed, in consensually recorded calls, the defendant himself represented that Palm was primarily responsible for certain of those financing efforts.

As detailed in the Complaint and Information in this case, the Government alleges that such efforts to obtain "financing" were, in fact, a ruse to embezzle funds from Company-1 and Company-2.  The Government expects the testimony at trial will demonstrate that the defendant misappropriated funds from Company-1 and Company-2 using a company controlled by Rawlins

---

[1] The Government is able to provide transcripts of the Palm Recordings upon the Court's request.

for which Palm also worked. Moreover, and as discussed in a subsequent section below, testimony at trial will establish that Palm served as Rawlins' negotiator and intermediary in defrauding a specific lender who ultimately provided more than $1 million to Rawlins, in the form of a loan, that has never been repaid.

### B.  Discussion

The Government respectfully submits that the Palm Recordings should be admitted pursuant to Rule 801(d)(2)(E) of the Federal Rules of Criminal Procedure because they demonstrate that Palm was attempting to conceal the fraud that he and the defendant undertook. Specifically, in several recordings made in approximately February through April 2014, Palm acknowledged his work with the defendant on behalf of Company-1 and Company-2, and his awareness of purported "financing" efforts undertaken on behalf of Company-1 and Company-2. In these recordings, Palm gives evasive answers to questions about why particular insurance loans were never obtained for Company-1 and Company-2, and why related funds were never returned to Company-1 and Company-2.  Palm further suggests in the recordings that Rawlins, not Palm, was responsible for handling such matters.  The Government expects that the evidence, including the testimony of other witnesses, will establish that these statements by Palm were largely deceptions that reveal Palm's involvement in the conspiracy and reflect his intent to deflect attention and minimize suspicion concerning the charged fraud.

### 1.  Rule 801(d)(2)(E)

The Government respectfully submits that these statements by Palm are not hearsay.  As a threshold matter, they are not being offered to prove the truth of the matters asserted. Palm, after all, is lying during many of the recorded calls.  Furthermore, the calls are not hearsay because they include statements of Rawlins's co-conspirator, Palm, in furtherance of their

conspiracy.  *See* Fed.R.Evid. 801(d)(2)(E) (defining as "not hearsay" any statement "offered against an opposing party" which "was made by the party's coconspirator during and in furtherance of the conspiracy).  To admit a statement under Rule 801(d)(2)(E), the court must find (i) that there was a conspiracy; (ii) that its members included the declarant and the party against whom the statement is offered; and (iii) that the statement was made during the course of and in furtherance of the conspiracy.  Bourjaily v. United States, 483 U.S. 171, 175 (1987); United States v. Russo, 302 F.3d 37, 45 (2d Cir. 2002).

### 2.   A Conspiracy to Conceal Criminal Conduct

Palm's statements in the recording are consistent with an agreement with Rawlins to cover up their fraud and therefore should be admitted.  Indeed, it is clear that the discovery of the fraudulent activity as to one co-conspirator, Palm, would jeopardize the very conspiracy with Rawlins. Accordingly, the Palm Recordings are evidence of Palm's concerted effort to avoid detection by Company-1, the CEO of Company-1, or Company-2. As such, Palm's statements made during the recorded phone calls were thus statements in furtherance of both a conspiracy to defraud Company-1, in which Rawlins participated, and the conspiracy to cover up the fraud, a conspiracy that is factually intertwined with the charged offense.  For these reasons, the Palm Recordings should be admitted at trial.  See, e.g., United States v. Vargo, 185 Fed. Appx. 111, 115 (2d Cir. 2006) (a statement in furtherance of a conspiracy to "cover up" the underlying crime is admissible under Fed.R.Evid. 801(d)(2)(E) where the declarant and the defendant are members of a conspiracy and that conspiracy is "factually intertwined" with the charged offense) (citing United States v. Stratton, 779 F.2d 820, 829 (2d Cir. 1985)).

### 3.   The Conspiracy Need Not be Charged

The aforementioned recordings are admissible even though the Government has not

charged a conspiracy here.  In <u>Russo</u>, the Second Circuit held that, in judging the admissibility of

a particular co-conspirator's statement under Rule 801(d)(2)(E), "the objective of the joint

venture that justifies deeming the speaker as the agent of the defendant need not be criminal at

all." 302 F.3d at 45.  Thus, a criminal conspiracy need not even exist.  This reading of Rule

801(d)(2)(E) has been echoed repeatedly by, among other courts, the Third, Fifth, Seventh,

Ninth, Tenth, and D.C. Circuit Courts of Appeal.  <u>See, e.g.</u>, <u>United States v. Gewin</u>, 471 F.3d

197, 200-01 (D.C. Cir. 2006) (in a securities fraud case, affirming District Court's admission of

statements based on a finding that the scheme's participants "had engaged in a common

enterprise of stock promotion," rejecting the claim that statements are admissible under Rule

801(d)(2)(E) only upon "a showing of an unlawful conspiracy, not merely action in concert

toward a common goal") (quoting Senate Advisory Committee note to Rule ("rule was 'meant to

carry forward the universally accepted doctrine that a joint venturer is considered as a

coconspirator'")); <u>United States v. Peralta</u>, 941 F.3d 1003, 1007 (9th Cir. 1991) (same); <u>United</u>

<u>States v. Layton</u>, 855 F.2d 1388, 1398-1400 (9th Cir. 1988) (same); <u>United States v. Bucaro</u>, 801

F.2d 1230, 1232 (10th Cir. 1986) (same); <u>Government of Virgin Islands v. Braithwaite</u>, 782 F.2d

399, 403-04 (3d Cir. 1986) (same); <u>United States v. Coe</u>, 718 F.2d 830, 835 (7th Cir. 1984)

(same); <u>United States v. Weisz</u>, 718 F.2d 413, 433 (D.C. Cir. 1984) (same); <u>United States v.</u>

<u>Saimiento-Rozo</u>, 676 F.2d 146, 149-50 (5th Cir. 1982) (same); <u>United States v. Kendall</u>, 665

F.2d 126, 129-30 (7th Cir. 1981) (same).

Moreover, it not necessary that the Government allege—or be able to prove—Palm's

criminal intent in order for the statements to be admissible.  Rather, it is sufficient that he

engaged in concerted action through a joint enterprise with Rawlins, which Rawlins used to commit the offense charged in the Information.  See, e.g., United States v. Coe, 718 F.2d at 835 (7th Cir. 1983) ("Conspiracy as an evidentiary rule differs from conspiracy as a crime.  The crime of conspiracy comprehends much more than just a joint venture or concerted action, whereas the evidentiary rule of conspiracy is founded on concepts of agency law.").  Thus, Palm's statements contained in the recordings should be admitted at trial.

IV.     **Certain Evidence of the Charged Crime and Other Charged
        and Uncharged Crimes, Wrongs, or Acts**

Pursuant to the Court's order and Federal Rules of Evidence 401, 402 and 404(b) ("Rule 404(b)"), the Government provides notice herein of its intention to offer evidence of certain specific acts undertaken by the defendant that were directed in whole or in part towards individuals not affiliated with Company-1 and Company-2.  The Government respectfully submits that such acts, which are described in further detail below, constitute direct and intrinsic evidence of the wire fraud charged in the Information.   Accordingly, the Government respectfully requests that the Court issue an order permitting such evidence to be admitted at trial pursuant to Federal Rules of Evidence 401 and 402.  In the alternative, to the extent the Court concludes that these acts constitute separate crimes, wrongs, or acts from the charged offense, the Government respectfully provides notice of its intent to introduce such evidence at trial and requests, as an alternative basis for the inclusion of this evidence, that the Court issue an Order permitting such evidence to be admitted pursuant to Federal Rule of Evidence 404(b).

A. **Background**

The defendant is charged in the Information with committing wire fraud in connection with his role as a financial consultant for Company-1 and Company-2.  In or about 2004,

Company-1 hired Steven Rawlins, the defendant, as a consultant to help Company-1 grow its business by, among other things, obtaining loans and lines of credit.  Over the years, Rawlins's duties grew, and he became the de facto Chief Financial Officer ("CFO") for the company.  In particular, Rawlins was given control over Compamy-1's and Company-2's accounting and financial records, which included overseeing the processing and paying invoices.  The Information alleges that Rawlins used his role as a consultant and de facto CFO to embezzle millions of dollars from Company-1 and Company-2's accounts.  Specifically, the Government alleges that the defendant represented that these funds were withdrawn for "financing," "due diligence fees," "taxes," or other legitimate business purposes, but were in fact used by Rawlins for unauthorized purposes, including coverage of personal expenses.  In carrying out his scheme, Rawlins operated through a series of related companies which he controlled.  In essence, the Government's allegation is that Rawlins's network of consulting companies was a vehicle for fraud, and that the defendant used the cover of purported efforts to secure "financing" and "loans" for clients as a means to fraudulently obtain and steal funds from those clients.[2]

## B.  Applicable Law

### 1.   Relevant Evidence of the Charged Offense

Pursuant to Federal Rule of Evidence 402, relevant evidence is admissible, unless the United States Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court provide otherwise.  Evidence is relevant if it has "any tendency

---

[2]    The Government does not intend by this Notice to delineate all of the incidents it will seek to prove at trial as direct evidence of the crime charged in the Information.  For example, there may be other victims of the defendant's fraudulent activities from whom the Government seeks to elicit testimony at trial.

to make a fact more or less probable than it would be without the evidence [and] the fact is of consequence in determining the action." Fed. R. Evid. 401.

2.     Other Acts as Direct Proof of the Charged Crimes

The Second Circuit repeatedly has held that evidence of uncharged criminal activity is admissible when it constitutes intrinsic or direct proof of a charged crime.  As such, evidence of uncharged criminal conduct may be admitted without reference to Rule 404(b) if it constitutes direct proof of charged criminal conduct, if it provides the jury with background for the events alleged in the Indictment, or if it arose out of the same transaction or series of transactions as the charged offenses.  See, e.g., United States v. Gonzalez, 110 F.3d 936, 941 (2d Cir. 1997) (holding that background evidence may be admitted to show the circumstances surrounding the events alleged in the indictment or to furnish an explanation of the understanding or intent with which certain acts were performed).  As the Second Circuit has explained:

> [E]vidence of uncharged criminal conduct is not evidence of "other crimes, wrongs, or acts" under Rule 404(b) if that conduct is "inextricably intertwined with the evidence regarding the charged offense."  United States v. Towne, 870 F.2d 880, 886 (2d Cir. 1989).  In such circumstances, the uncharged crime evidence is necessary to "complete the story of the crime on trial," id., and, thus, appropriately treated as "part of the very act charged," or, at least, proof of that act, United States v. Concepcion, 983 F.2d [369, 392 (2d Cir. 1992)].

United States v. Quinones, 511 F.3d 289, 309 (2d Cir. 2007); see also United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000) ("evidence of uncharged criminal activity is not considered 'other crimes' evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial" (internal

alterations and quotation marks omitted)); <u>Towne</u>, 870 F.2d at 886 (same); <u>see also</u> Weinstein's

Federal Evidence, § 404.20[2][b] (noting that evidence of other wrongs is admissible without

regard to Rule 404(b) where those wrongs "were necessary preliminaries to the crime charged");

404.20[2][c] (noting that evidence of other acts "is admitted if it contributes to an understanding

of the event in question, even if it reveals crimes other than those charged, because exclusion

under those circumstances would render the testimony incomplete and confusing").

       3.    <u>Other Acts Evidence as 404(b) Evidence</u>

In addition, Under Rule 404(b), the Court has the discretion to admit evidence of other

crimes, wrongs, or acts committed by the defendant so long as it is relevant proof of some issue

at trial other than the defendant's propensity to commit the charged crimes.  Rule 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove
> the character of a person in order to show action in conformity
> therewith.  *It may, however, be admissible for other purposes, such
> as proof of motive, opportunity, intent, preparation, plan,
> knowledge, identity, or absence of mistake or accident*, provided
> that upon request by the accused, the prosecution in a criminal case
> shall provide reasonable notice in advance of trial, or during trial if
> the court excuses pretrial notice on good cause shown, of the
> general nature of any such evidence it intends to introduce at trial.

Fed. R. Evid. 404(b) (emphasis added).

The Second Circuit "has adopted an 'inclusionary' approach to other act evidence under

Rule 404(b), which allows such evidence to be admitted for any purpose other than to

demonstrate criminal propensity."  <u>United States v. LaFlam</u>, 369 F.3d 153, 156 (2d Cir. 2004);

<u>see also</u> <u>United States v. Pascarella</u>, 84 F.3d 61, 69 (2d Cir. 1996); <u>United States v. Lasanta</u>, 978

F.2d 1300, 1307 (2d Cir. 1992).  In order to determine whether a district court properly admitted

other act evidence, the reviewing court considers "whether (1) it was offered for a proper

purpose; (2) it was relevant to a material issue in dispute; (3) its probative value is substantially

outweighed by its prejudicial effect; and (4) the trial court gave an appropriate limiting instruction to the jury if so requested by the defendant." LaFlam, 369 F.3d at 156.

Applying these principles, the Second Circuit has routinely approved of the admission of "other crimes" evidence with respect to the issue of knowledge, intent, and motive. See, e.g., United States v. Thomas, 54 F.3d 73, 81–82 (2d Cir. 1995); United States v. Meyerson, 18 F.3d 153, 166–67 (2d Cir. 1994). Moreover, the Second Circuit has consistently recognized that evidence of the defendant's involvement in similar crimes is not only probative of intent, but is particularly appropriate where the defendant claims that his conduct has an innocent explanation—a claim that the defendant is expected to make at trial in this matter. See, e.g., United States v. Tartir, 347 F. App'x 655, 658 (2d Cir. 2009) (affirming then District Judge Lynch's admission of prior fraudulent marriage scheme pursuant to Rule 404(b) in the face of a claim that the defendant did not know the marriages in question were fraudulent because the prior conduct "tended to show that [the defendant] had the requisite intent to support his conviction . . . and was corroborative of the government's other evidence of knowing involvement in the scheme to evade immigration laws."); United States v. Zackson, 12 F.3d 1178, 1182 (2d Cir. 1993) ("Where a defendant claims that his conduct has an innocent explanation, prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged."); United States v. Arango Correa, 851 F.2d 54, 60 (2d Cir. 1988) ("To meet [the defendant's] defense that he was merely on hand to assist [a co-defendant] in receiving a shipment of paper and that he had no knowledge of the true nature of the shipment, the government's offer of proof that [the defendant] was familiar with narcotics transactions was clearly relevant and probative"); United States v. Caputo, 808 F.2d 963, 968 (2d Cir. 1987) (allowing "evidence of appellants' involvement with previous credit card

17

schemes" because it was "probative of their intent in possessing the 'access devices' for which they were charged").

A defendant's knowledge and intent is at issue unless the defendant has unequivocally conceded that element of the offense.  See, e.g., United States v. Colon, 880 F.2d 650, 656 57 (2d Cir. 1989); Peterson, 808 F.2d at 974; see also United States v. Ramirez, 894 F.2d 565, 568 (2d Cir. 1990) (holding that when the defendant "disavows awareness that a crime was being perpetrated" and the government bears the burden of proving knowledge "as an element of the crime, knowledge is properly put in issue").

    4.    Rule 403

Whether admitted as direct evidence of the conspiracy or pursuant to Rule 404(b), the offered evidence remains subject to Federal Rule of Evidence 403.  As such, the Court must determine whether the probative value of the offered evidence is "substantially outweighed" by a danger of, inter alia, "unfair prejudice" or confusion.  Fed. R. Crim. P. 403.  The Second Circuit has found admission appropriate where the offered evidence "'did not involve conduct any more sensational or disturbing than the crimes with which [the appellants were] charged.'" Pitre, 960 F.2d at 1120 (quoting United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990)).  In any event, the Court may minimize any prejudice to defendants with a limiting instruction to remind the jury that the defendants are not on trial for any offense other than the crime charged.  See United States v. Tussa, 816 F.2d 58, 68 (2d Cir. 1987) (limiting instruction sufficient to preclude prejudice to defendant); see generally Parker v. Randolph, 442 U.S. 62, 75 n.7 (1979) ("The 'rule' – indeed, the premise upon which the system of jury trials functions under the American judicial system – is that juries can be trusted to follow the trial court's instructions.").

C.  **Discussion**

The Government may seek to offer evidence of the following specific acts by the

defendant, which the Government respectfully submits are admissible as direct evidence of the

charged offense pursuant to Federal Rules of Evidence 401 and 402, or, alternatively, as other

uncharged crimes, wrongs or acts, pursuant to Rule 404(b).

1.  Rawlins Provides Fabricated Documentation to Company-3

The Government may seek to elicit testimony at trial from a representative of a company

("Witness-1" and "Company-3") who communicated with Rawlins and certain of his business

associates in or about mid-2014 regarding a potential financing transaction.  Specifically,

Witness-1 would testify that Rawlins and at least two of his business associates solicited

Witness-1 to engage in a transaction in which Company-3 would purchase receivables and

provide a cash advance exceeding $1 million to a company controlled by Rawlins.  The advance

was related to an $8.6 million contract that Rawlins' company purportedly maintained with

Philip Morris International.  During these negotiations with Company-3, an associate of Rawlins

provided Witness-1 a letter that was signed by another associate of Rawlins, Darren Morris

("Morris").  The letter bore the corporate insignia of Philip Morris International ("Philips

Morris") and purported to verify Rawlins's aforementioned contract with Philip Morris.

Moreover, Rawlins' associate also indicated to Witness-1 that Rawlins' company maintained

other high-profile client relationships, including with Company-1 and Harvard University.  The

Government expects to elicit testimony from a representative of Philip Morris establishing that

the aforementioned letter bearing Philip Morris's insignia was not authentic, and that the

purported contract between Rawlins' company and Philip Morris never existed and was a

complete sham.  Moreover, the Government expects to offer evidence at trial showing that certain of the funds embezzled from Company-1 by Rawlins were transferred directly to the bank account of a corporation controlled and operated by Morris, who also shared office space with Rawlins.

The aforementioned acts should be admitted at trial because they constitute direct and intrinsic evidence of Rawlins' intent to defraud his clients and potential clients, including Company-1 and Company-2.  Specifically, these efforts to obtain a cash advance from Company-3 were part and parcel of Rawlins' overall scheme, which used a network of the defendant's own companies to solicit business, fabricate purported "financing" opportunities, and thereby receive and embezzle funds from clients.  Accordingly, these acts are admissible as direct evidence because they "arose out of the same transaction or series of transactions as the charged offense [and are] necessary to complete the story of the crime on trial."  Carboni, 204 F.3d at 44.  Moreover, the acts are "inextricably intertwined with the evidence regarding the charged offense," id., because, among other reasons: (1) Rawlins' associate specifically referred to Company-1 during his negotiations with Company-3, and (2) certain of the funds that the Government alleges were embezzled directly from Company-1 were received by a company controlled by Darren Morris, who shared office space with Rawlins and was the signatory of the fabricated letter from Philip Morris used to defraud Company-3.

In short, the defendant's fraud on Company-3 is linked, and overlaps, directly to his fraud on Company-1 and Company-2.  In the event, however, that the Court determines that the aforementioned acts are separate from those charged in the Information, the Government respectfully submits that they are nevertheless admissible on an alternative basis pursuant to Rule 404(b) as evidence of intent, knowledge, and plan.  Specifically, the fact that the Rawlins

solicited other clients by means similar to those used to perpetrate his fraud on Company-1 and Company-2, namely by providing false information and fabricated documents, (i) evinces his intent to deceive his clients, (ii) demonstrates his use of a concerted plan to carry out his fraud; and (iii) establishes his lack of mistake in improperly obtaining client funds and failing to return them.  See United States v. Harvey, 959 F.2d 1371, 1374 (7th Cir. 1992) (holding evidence of efforts to defraud other victims was admissible because it "raise[d] the inference that [the defendant's] dealings . . .  were all part of a common scheme [and that] that [the defendant's] failures to obtain loans or refund advance fees were intentional, rather than the result of accident or bad luck.").

Moreover, there is little or no risk of prejudice resulting from the testimony of these additional victims, the fraudulent conduct at issue was therefore of the same type and character as that specified in the Information.  Id..  In fact, insofar as Company-3 did not suffer as significant a financial loss as Company-1 and Company-2, the prejudicial impact of evidence of these acts is reduced.  Accordingly, evidence of the communications and negotiations between the defendant, his associates, and Company-3, should be admitted at trial.

2.   Rawlins Uses the Same Tactics and Misrepresentations Used Against Company-1 to Defraud a Start-up Company

The Government also may seek to elicit testimony at trial from two witnesses ("Witness-2" and "Witness-3") who were partners in a start-up company (the "Start-up Company") located in Tennessee.  The Government expects that these witnesses will testify that in or about 2013, they were contacted by Rawlins who offered to obtain approximately $4 million in financing for their Start-up Company.  The Government expects that Witness-2 and Witness-3 would testify that they provided Rawlins at least approximately $200,000 in order to obtain the promised

21

financing, which never materialized.  Witness-2 and Witness-3 also would testify that they never

received any funds back from Rawlins.  Moreover, Witness-2 would testify that, during their

discussions regarding the aforementioned "financing," Rawlins represented that he had obtained

accounts receivable insurance from a particular insurance company ("Insurance Company-1")

and presented Witness-2 with a purported insurance certificate documenting the insurance.

Documentary evidence and testimony at trial would establish however, that Rawlins never

obtained such insurance from Insurance Company-1, and that the aforementioned certificate was

falsified and a sham.

   Similarly, testimony from employees of Company-1, the primary victim in this case, will

establish that in carrying out the charged fraud, Rawlins also claimed to have obtained (and paid

for) insurance from the same insurance company, Insurance Company-1, on behalf of the victim

company.  Testimony from one or more employees of Insurance Company-1 would further

establish that no insurance policy was ever held in Company-1's name and that, while an

insurance policy was initially opened in the name of a company controlled by Rawlins, the

policy was closed because no payments were made.  Government witnesses would further testify

that the funds the defendant withdrew from Company-1 in connection with the purported

insurance policy were never returned to Company-1.

   The aforementioned facts should be admitted at trial because they constitute direct

evidence of Rawlins' intent to defraud his clients and potential clients, including Company-1 and

Company-2.  Specifically, the fact that the defendant made essentially identical false

representations concerning the same insurance company to Company-1 and the Start-up

Company demonstrates that his acts all "arose out of the same transaction or series of

transactions as the charged offense [and are] necessary to complete the story of the crime on

trial." Carboni, 204 F.3d at 44.  Moreover, these acts are "inextricably intertwined with the evidence regarding the charged offense," id., because they occurred during the same time period; involved the same companies controlled by Rawlins; and reflected the use of similar or identical tactics to deceive and defraud clients.  In short, his fraud on the Start-up Company was a continuation of his ongoing fraud upon his clients, including Company-1 and Company-2, and is therefore admissible as direct evidence of the crime charged in the Information.

Finally, and as argued above with respect to Company-3, these acts are admissible in the alternative pursuant to Federal Rule of Evidence 404(b) because they "were all part of a common scheme" demonstrating that the defendant's acts "were intentional, rather than the result of accident or bad luck." Harvey, 959 F.2d at 1374.  Specifically, the defendant's false representations to multiple victims concerning Insurance Company-1 are highly probative because they refute any potential claim by the defendant that his fraudulent misrepresentations concerning insurance policies to Company-1 were made in good faith or were based on a mere misunderstanding by the defendant.  Instead, this evidence will demonstrate the defendant's intent, plan and lack of mistake with regards to the charged crime.  Moreover, testimony from these additional victims would not be prejudicial, as the conduct described is essentially the same conduct specified in the Information.

3.     Rawlins Defrauds a Lender As Part of His Scheme and Repays the Lender Using Company-1 Funds

The Government also may seek to elicit testimony from another individual ("Witness-4") who would testify that he was defrauded in connection with two loans he provided to the defendant in or about 2012.  Specifically, Witness-4 would testify that he owns and runs several restaurants in California and that, in or about 2012, he used funds from one of his restaurant

companies ("Restaurant Company-1") to provide a loan of approximately $100,000 to Rawlins through one of Rawlins' companies.  Although Rawlins's first attempt to pay back the loan resulted in a bounced check, Rawlins eventually paid back the loan.  Documentary and testimonial evidence would establish, however, that the defendant used the funds of the victim company in this case, Company-1, in order to repay the loan, despite the fact that the loan was never intended for or used by Company-1.  Witness-4 would testify that he has never heard of Company-1, and did not believe that the aforementioned loan was related in any way to Company-1.

Moreover, the Government expects Witness-4 would further testify that he also provided a second $1.4 million loan to the defendant, and that the defendant never repaid the loan. Witness-4 would testify that in connection with both of the aforementioned loans to the defendant, Franklin Palm acted as Rawlins's representative and intermediary in negotiating the loan terms and amounts.  Witness-4 would further testify that Palm and Rawlins claimed that the collateral for both loans were account receivables that Philip Morris International owed to Rawlins pursuant to a contract he maintained with the company.  Rawlins and Palm provided documents to Witness-4 purportedly reflecting such a contract.  As noted above, however, Government witness testimony would establish at trial that no such contract existed, and that Morris, the signatory on certain of these fabricated documents, shared an office with Rawlins and controlled a company that separately received funds embezzled from Company-1.  In short, Rawlins's fraud on Restaurant-Company-1 involved funds from Company-1, and the same co-conspirators involved with Company-1 (Palm and Morris).

The aforementioned acts should be admitted at trial because they constitute core and direct evidence of Rawlins' fraud on Company-1 and Company-2.  These acts were essential to,

and inextricable from, the charged fraud because they involved the unauthorized withdrawal of Company-1 funds in order to pay a loan obtained by Rawlins.  Such a blatant violation of the terms of Rawlins's engagement by Company-1 constitutes powerful and probative evidence of his fraudulent intent.  Moreover, these events involving Restaurant Company-1 were instrumental aspects of the charged fraud.  Specifically, Rawlins' reliance on Palm and Darren Morris, and his use of fabricated documents concerning Philip Morris, provide further corroboration of the defendant's common and over-arching scheme to defraud Company-1, Company-2, and other clients through his so-called consultancy business.

Finally, and as argued above, to the extent any of these events could be construed as "other acts" separate from the charged fraud, they fall squarely within the realm of admissible evidence pursuant to Rule 404(b) because they establish that the defendant acted knowingly and engaged in a recurring pattern of deception that reflected his "intent, preparation, plan, knowledge[,] absence of mistake, [and] lack of accident." Fed. R. Evid. 404(b).  And, as above, testimony about these events would not be prejudicial, as the conduct described is no more egregious than that described in the Information.

### 4.   Rawlins Defrauds Another Healthcare Services Company with False Promises of "Financing"

The Government also may seek to elicit testimony from another individual ("Witness-5") who served as President and CEO of a healthcare services company based in New Jersey ("Healthcare Company-1").  The Government expects that Witness-5 would testify that in or about 2010, Company-1's CEO introduced Witness-5 to the defendant because Witness-5 was searching for someone to buy ownership positions in Healthcare Company-1 that another company held.  Thereafter, Witness-5 met and spoke with Rawlins who—through one of his

several companies—ultimately purchased the aforementioned ownership positions.  Over approximately a one-year period, Witness-5 also paid Rawlins more than $75,000 to try and help Healthcare Company-1 obtain financing, but such financing never materialized.  The Government's evidence would establish that on one occasion, Rawlins and Witness-5 met with representatives of a bank about potential financing for Healthcare Company-1, and Rawlins told Witness-5 to exaggerate the company's receivables, which Witness-5 did not do.  On another occasion, Witness-5 traveled to Tennessee in order to inquire as to why Rawlins never obtained financing for Healthcare Company-1 and had stopped answering his phone.  The Government expects Witness-5 would testify that upon seeing Witness-5, Rawlins ran away, entered his vehicle, and drove away.

The aforementioned facts should be admitted at trial because they constitute direct evidence of Rawlins' fraud upon his consultancy clients by offering false promises of "financing" that never materialized.  Moreover, they are part of the same course of conduct as the charged fraud, insofar as Healthcare Services Company-1 is strikingly similar to Company-1.  Moreover, Company-1's CEO introduced Witness-5 to the defendant.  Finally, there is perhaps no more vivid evidence of the defendant's intent to defraud and deceive his clients than his efforts literally to flee from a purported client, Witness-5.

Even if the Court finds that these events involving Healthcare Company-1 are separate and uncharged acts, they should be deemed admissible pursuant to Federal Rule of Evidence 404(b) because they reflect the defendant's concerted plan, and knowledge and intent, to make false representations to multiple potential clients in the hope of stealing their funds.  Nor are they overly prejudicial under Rule 403.  Just as Rawlins bilked Company-1 and Company-2 of their assets with false representations concerning his efforts to seek "financing" that never

26

materialized, Rawlins similarly stole funds from Witness-5 with similar promises for Healthcare Company-1.

5.    Rawlins Forges the Signature of a Company-2 Employee in Connection with a Mortgage Application By His Son

The Government may seek to elicit testimony at trial of a Company-2 employee who worked closely with Rawlins as his administrative and executive assistant ("Witness-6"). Specifically, the Government expects that Witness-6 would testify, among other things, that in or about June 2011, Rawlins forged Witness-6's signature on a letter purportedly written by Witness-6 to a bank from which the defendant's son had recently sought a mortgage. The letter, which bears the letterhead of one of Rawlins's companies, conveyed information to the bank regarding a purported housing allowance that Rawlins's son was to receive from the company. In addition to Witness-6's testimony about this letter, the Government also may seek to introduce a recording that Witness-6 made of a conversation with the defendant on Witness-6's own initiative in March 2012, prior to the FBI's investigation of this matter. During the recording, Witness-6 confronts the defendant about, among other things, the forgery of Witness-6 signature and the defendant's improper handling and comingling of funds belonging to Company-1 and Company-2. During the recording, the defendant admits to forging Witness-6's signature. Witness-6 would also likely testify that this forgery was part of a much broader pattern of behavior through which the defendant defrauded Company-2 and abused his authority there. Specifically, Witness-6 would testify that Witness-6 observed the defendant, among other things, comingling personal and corporate funds; preparing or requesting the preparation of bogus invoices; in possession of blank checks bearing the purported signature of Company-1's CEO;

and failing to submit payments to Tennessee tax authorities that he was responsible for paying on behalf of Company-1.

The aforementioned evidence should be admitted at trial as direct evidence of the charged conspiracy. Specifically, the defendant's forgery of Witness-6's signature falls squarely within the course of conduct that was his fraud—namely, the improper use of Company-1 and Company-2 resources, funds, and employees to further his own personal interests and those of his family and associates. The above-described episode only further illustrates and confirms the defendant's repeated abuse of his authority over Company-2's resources. The fact that the defendant engaged in an outright fabrication and forgery using the name of a Company-2 employee (Witness-6) is highly probative of his mental state insofar as it establishes his intent to deceive and defraud. Indeed, and as noted above, the forgery was merely part of a wider course of conduct in which the defendant abused his authority as a financial consultant for Company-1 and Company-2. Moreover, to the extent the Court concludes that this incident involving the defendant forging Witness-6's signature constitutes a separate wrongful act from the charged wire fraud, it should be admissible pursuant to Federal Rule of Evidence 404(b) because it offers highly probative proof of the defendant's knowing and willful efforts to deceive his clients during precisely the time period of the charged offense. Furthermore, the evidence involving Witness-6 described herein could not possibly be construed as overly prejudicial so as to implicate the concerns of Rule 403.

6.    The Defendant's Company Files for Bankruptcy

In or about March 2012, one of the companies that was controlled by the defendant (and repeatedly used in the alleged fraud) filed for bankruptcy. The Government expects to elicit testimony at trial concerning the facts of the bankruptcy, including the defendant's statements

concerning the bankruptcy and other witnesses' knowledge of it.  The Government respectfully submits that this evidence is highly probative of the defendant's motive to commit the charged fraud and therefore should be admissible.  Specifically, the bankruptcy evidence would establish that the defendant's company was in financial distress, thereby providing a reason why the defendant would commence, continue, or intensify his efforts to improperly obtain funds from Company-1 and Company-2.  Accordingly, "such evidence . . .  would show motive to effectuate the fraudulent scheme." United States v. Bard, 2013 WL 3157551, *2 (M.D. Pa. June 20, 2013); see also United States v. Shelow, 2011 U.S. Dist. LEXIS 141626, *3 (E.D. Pa. Dec. 9, 2011) (ruling that evidence of financial distress admissible to show motive to obtain funds in fraudulent investment scheme).

Accordingly, the Government hereby provides notice of its intent to elicit testimony and present evidence concerning the acts and incidents described in Sections 1 through 6 above, and respectfully seeks an Order permitting the Government to admit such evidence.

**V.**     **Conclusion**

Given the sensitive nature of the information proffered in Section II above, the

Government respectfully requests that these motions be filed under seal.  In the alternative, the

Government requests leave to file a version of these motions with Section II redacted.

Dated: September 28, 2015
       New York, New York

                                    Respectfully submitted,

                                    PREET BHARARA
                                    United States Attorneys

                        By:   /s/
                              Andrew Bauer
                              Andrew DeFilippis
                              Assistant United States Attorneys
                              (212) 637-2354 /2231