UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

United States of America,

–v–

Steven Rawlins,

Defendant.

15-CR-377 (AJN)

MEMORANDUM &
ORDER

---

ALISON J. NATHAN, Circuit Judge, sitting by designation:

Defendant Steven Rawlins moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons that follow, the motion is DENIED.

## I.   BACKGROUND

Rawlins served as a consultant and CFO for Prime Health Services and Core Choice, two healthcare services companies. *See* Dkt. No. 121 ("PSR"), ¶¶ 7–8.[1] It was later discovered that Rawlins used his authority as CFO to misappropriate approximately $8 million from these companies. *Id.* ¶¶ 22–26. Rawlins withdrew funds from the companies under the pretenses of paying financing and due diligence fees, insurance payments, taxes, and other legitimate business payments, but secretly placed the funds into personal bank accounts to enrich himself and his family. *Id.*

In February 2015, Rawlins was arrested and charged with one count of wire fraud in violation of 18 U.S.C § 1343. Dkt. No. 1. Following a jury trial in November 2015, Rawlins was found guilty on the sole count charged. Dkt. No. 116 at 2093–94. The Court sentenced

---

[1] The factual recitation in the PSR was adopted by the Court in relevant part without objection at Rawlins's sentencing hearing. Dkt. No. 143 at 9–10.

Rawlins principally to 108 months' imprisonment. Dkt. No. 141. The Second Circuit affirmed this Court's judgment on direct appeal. *See United States v. Rawlins*, 696 F. App'x 22 (2d Cir. 2017) (summary order).

Since May 2020, Rawlins has been on home confinement managed by RRM Nashville, a Bureau of Prisons ("BOP") Residential Reentry Management field office located in Nashville, Tennessee, and Dismas Charities, a halfway house. *See* Dkt. No. 173 ("Def.'s Mot."), at 8;[2] Dkt. No. 175 ("Gov't Opp'n"), at 2, 4. Rawlins's projected release date is currently October 19, 2023. Gov't Opp'n 2.[3] On November 17, 2022, the Court received a motion for compassionate release from Rawlins filed *pro se*. Def.'s Mot.[4] On December 1, 2022, the Government filed its opposition to Rawlins's motion. Gov't Opp'n. On December 2, 2022, the Court denied Rawlins's request for the appointment of counsel and set a deadline for him to file any reply. Dkt. No. 176. Rawlins filed his reply on December 12, 2022. Def.'s Reply.

## II. LEGAL STANDARDS

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011) (cleaned up). The compassionate release provision of the First Step Act creates one such exception: It allows a court to "reduce" a term of imprisonment, after considering the factors set forth in 18 U.S.C. § 3553(a), if "it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is

---

[2] References to specific pages in this document are to the page numbers generated by the Court's Electronic Case Filing ("ECF") system.

[3] Rawlins indicates that a correct calculation of his earned time credit results in a projected release date of May 1, 2023, that the current date is the result of an administrative error, and that he is currently in the process of correcting that error administratively. Dkt. No. 177 ("Def.'s Reply"), at 1–2; *id.* ex. B.

[4] The Court granted Rawlins's request to file certain attachments to the motion, namely certain medical records and a proposed release plan, under seal. *Id.* at 1.

consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Under the First Step Act, defendants serving their sentence may move the Court for compassionate release after they have exhausted their administrative remedies or thirty days have lapsed from the receipt of a compassionate release request by the warden. *See United States v. Scparta*, 567 F. Supp. 3d 416, 421 (S.D.N.Y. 2020).

In order for the Court to grant a reduction of a defendant's term of imprisonment under 18 U.S.C. § 3582(c)(1)(A), there must be "extraordinary and compelling reasons" warranting such a reduction. The Second Circuit has held that courts may "independently . . . determine what reasons, for purposes of compassionate release, are 'extraordinary and compelling.'" *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020). However, presenting an extraordinary and compelling reason for release is only one of the requirements for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). *See United States v. Ross*, No. 15-CR-95 (AJN), 2022 WL 1018184, at *2 (S.D.N.Y. Mar. 25, 2022). The Court must also determine that granting release is consistent with the factors set forth in 18 U.S.C. § 3553(a) and the applicable policy statements of the Sentencing Commission. *See* 18 U.S.C. § 3582(c)(1)(A). In particular, the Court must consider whether a reduced sentence would still "reflect the seriousness of the offense, . . . promote respect for the law, . . . provide just punishment for the offense," and "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A)–(B).

## III.   DISCUSSION

As an initial matter, before the Court may modify a term of imprisonment, a defendant usually must satisfy the statute's administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A). Although Rawlins's moving papers indicated that he submitted an administrative request for compassionate release to RRM Nashville via email on September 12, 2022, and followed up several times over the following weeks, Def.'s Mot. at 9, the

Government's opposition contended that "Rawlins fails to attach any documentation to substantiate his assertion, and records provided by the BOP . . . do not reflect any compassionate release request submitted to RRM Nashville or any administrative remedy received or responded to," Gov't Opp'n at 4; *see also* Dkt. No. 175-2.  In his reply, Rawlins asserts that "[i]n order to facilitate the Compassionate Release request in a correct manner due to there being no warden relative to home confinement, Rawlins inquired of his Dismas Case Manager and Director as per procedure" and "[b]oth advised that the correct procedure consisted of sending the petition to the director of the Nashville RRC."  Def.'s Reply at 1.  Rawlins also attached copies of the relevant email correspondence to his reply.  *Id.* ex. A.

The Court need not resolve this dispute over administrative exhaustion, however, because even assuming that Rawlins has satisfied the exhaustion requirement, the Court concludes that he has not demonstrated the existence of an extraordinary or compelling reason that warrants compassionate release or a modification of his sentence.  In his initial moving papers, Rawlins argued that his wife, with whom he resides, suffers from various medical ailments, including physical and neurological injuries sustained in a fall from a second-story attic and related complications, as well as "asthma and respiratory issues."  Def.'s Mot. at 8.  He asserts that he spends most of his time "assisting her in daily activities, especially regarding mobility and cognitive issues," and he is "her only source of assistance."  *Id.*  The Government disputes that "Rawlins' desire to care for his wife . . . rise[s] to the level of extraordinary and compelling reasons for release," because "aside from his own assertion that he is the sole caretaker for his wife, Rawlins does not explain why that is so or provide any evidence to support his claim that he is the only available caregiver," and, in any event, "even crediting Rawlins' assertion that he is his wife's sole source of assistance, it appears that he is in fact already able to assist his wife,

and so the relief that he is seeking (*i.e.*, compassionate release so he can assist his wife) is moot." Gov't Opp'n at 6. In his reply, Rawlins emphasizes his wife's asthma, the possibility that an asthma attack might necessitate a trip to the emergency room, and the delay that might result from the need to either wait for approval to leave his house or to wait for the arrival of an ambulance or relatives who live "over 30 minutes away." Def.'s Reply at 3.

"[T]he need to care for one's aging and sick relatives may, in certain circumstances, warrant a finding that an extraordinary and compelling reason exists." *United States v. Burrell*, No. 15-CR-95 (AJN), 2020 WL 7646887, at *3 (S.D.N.Y. Dec. 23, 2020) (cleaned up). "[W]hether the medical condition of a defendant's family member justifies the defendant's release generally depends on whether other caretakers are available." *United States v. Guillen*, No. 18-CR-640 (RA), 2021 WL 77029, at *2 (S.D.N.Y. Jan. 7, 2021) (collecting cases); *see also United States v. John*, No. 15-CR-208 (CM), 2020 WL 6581217, at *2 (S.D.N.Y. Nov. 10, 2020) (noting "§ 3582(c)(1)(A)(i) still only authorizes release where the family circumstances are truly extraordinary and compelling"). Here, however, Rawlins has already been placed on home confinement and currently resides with his wife. By Rawlins's own account, he currently spends "[m]uch of [his] time . . . assisting her in daily activities." Def.'s Mot. at 8. In other words, because Rawlins is not currently incarcerated, he already can, and does, act as his wife's caretaker. Rawlins's sole argument for why he, on home confinement, cannot adequately care for his wife's needs is premised almost entirely on the notion that any delay in obtaining permission to leave his home in order to transport his wife to the hospital might endanger her. But even assuming that the possibility of his wife suffering an asthma attack necessitating a hospital trip is not too speculative to warrant granting relief, Rawlins cites no authority, and provides no explanation, for why calling an ambulance or other emergency services in the event

of an emergency would not be an adequate—or, indeed, the appropriate—course of action should an emergency occur.

In sum, Rawlins has not established that extraordinary circumstances merit the relief he seeks, and his motion must be denied on that basis.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion for compassionate release is DENIED. The Clerk of Court is respectfully directed to mail a copy of this Order to Defendant and to note the mailing on the public docket.

SO ORDERED.

Dated: December 15, 2022
       New York, New York

_____
ALISON J. NATHAN
United States Circuit Judge,
sitting by designation